IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA



FILED
IN OPEN COURT

JUN 16 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 1:11-CR-261 |
| v. ) | |
| ) | Count 1: 21 U.S.C. §§ 846, 841(a)(1) |
| YONIS MUHUDIN ISHAK, (Counts 1 & 2) ) | Conspiracy to Distribute and Possess with |
|    a.k.a. "Yunis Sheikal," ) | Intent to Distribute Cathinone |
|    a.k.a. "Shak," ) | |
|    a.k.a. "Yunis Mohodin Ishak," ) | Count 2: 18 U.S.C. § 1956(h) |
|    a.k.a. "Yonis Mulardin Ishak," ) | Conspiracy to Commit Money Laundering |
|    a.k.a. "Tonis M. Ishak," ) | |
|    a.k.a. "Yunis Muhudin Ishaq," ) | Forfeiture |
|    a.k.a. "Yunis M. Sheeaq Ishaq," ) | 21 U.S.C. § 853 |
|    a.k.a. "Anab Ahmed Hassan," ) | 18 U.S.C. § 982 |
|    a.k.a. "Ashak," ) | |
| ) | |
| ABDULKADIR ALI ISSE, (Counts 1 & 2) ) | |
|    a.k.a. "Abdul," ) | |
|    a.k.a. "Burane," ) | |
| ) | |
| SUADO MOHAMED ALI, (Counts 1 & 2) ) | |
|    a.k.a. "Suada Mohamed Ali," ) | |
|    a.k.a. "Sue," ) | |
| ) | |
| HIBO MUSSE SAMANTAR, (Count 1) ) | |
|    a.k.a., "Fadumo," ) | |
| ) | |
| AHMED ALI HASSAN, (Count 1) ) | |
|    a.k.a., "Dirir," ) | |
| ) | |
| OSMAN YUSUF, (Counts 1 & 2) ) | |
| ) | |
| ABDIRAHMAN ABSHIR JIBRIL, (Counts 1 & 2) ) | |
|    a.k.a. "Abdi Ali Mire," ) | |
| ) | |
| HARUN SALHAN, (Counts 1 & 2) ) | |
| ) | |
| HASSAN HASSAN, (Counts 1 & 2) ) | |
|    a.k.a., "Elay," ) | |

| | |
|---|---|
| ISMAIL MOHAMUD ABDI, (Counts 1 & 2) | ) |
| | ) |
| ABDI MUHUMED, (Counts 1 & 2) | ) |
|    a.k.a. "Juba," | ) |
| | ) |
| LUTF MOHAMED ALBUKHAITI, (Counts 1 & 2) | ) |
| | ) |
| NAGI MANSOR SEAA ALASHMALI, (Count 1) | ) |
|    a.k.a., "Mohamed Albokhiti," | ) |
| | ) |
| MOHEEB AHMED MOHAMMED NASSER, (Count 1) | ) |
| | ) |
| KHALED AHMED ISA, (Counts 1 & 2) | ) |
|    a.k.a. "Khalid Ahmed Aesaa," | ) |
|    a.k.a. "Adnan," | ) |
|    a.k.a. "Hamza," | ) |
|    a.k.a. "Khaled A. Aesa," | ) |
| | ) |
| ABDI OMAR ABDI, (Counts 1 & 2) | ) |
| | ) |
| ABOKOR GURREH, (Counts 1 & 2) | ) |
|    a.k.a. "Mubarak," | ) |
|    a.k.a. "Mohamed Farhan," | ) |
|    a.k.a. "Farhan M. Mohamed," | ) |
| | ) |
|    Defendants. | ) |

**JUNE 2011 TERM - AT ALEXANDRIA**

<u>**SUPERSEDING INDICTMENT**</u>

THE GRAND JURY CHARGES THAT:

GENERAL ALLEGATIONS

    1.    The defendants were members of a conspiracy whose primary purpose was to make money through the importation and distribution of a mixture and substance of khat which

contained cathinone. Some of the defendants were members of a second conspiracy whose purpose was to launder the proceeds of the khat distribution.

2.  The leader of the conspiracies was defendant YONIS MUHUDIN ISHAK, who is originally from Somalia and who was based in Arlington, Virginia. All of the other members of the two conspiracies were originally from Somalia or Yemen. Defendant ABDULKADIR ALI ISSE is a native of Somalia who is closely associated with defendant YONIS MUHUDIN ISHAK and assisted him in the distribution of khat and the management of the conspiracy to distribute khat.

3.  Defendant SUADO MOHAMED ALI is a native of Somalia who assisted in the distribution of khat in Virginia, allowed defendant YONIS MUHUDIN ISHAK to use her credit card to rent vehicles for the receipt and distribution of khat, and transferred proceeds of khat sales to suppliers of khat.

4.  Defendants HIBO MUSSE SAMANTAR, AHMED ALI HASSAN, HARUN SALHAN, HASSAN HASSAN, ISMAIL MOHAMUD ABDI, and ABDI MUHUMED are natives of Somalia who distribute khat supplied by defendant YONIS MUHUDIN ISHAK and other co-conspirators in the Washington, D.C./Northern Virginia/Southern Maryland area.

5.  Defendant OSMAN YUSUF served as the manager of Dahabshiil, Inc.'s Northern Virginia office, located in Falls Church, Virginia. Dahabshiil, Inc. is a money service business which transfers currency from the United States to African and Middle Eastern countries, among other places. One of Dahabshiil, Inc.'s employees was defendant ABDIRAHMAN ABSHIR JIBRIL, who, along with defendant OSMAN YUSUF, assisted in the transfer of proceeds of khat distribution to khat suppliers and others.

6. Defendants LUTF MOHAMED ALBUKHAITI, NAGI MANSOR SEAA ALASHMALI, MOHEEB AHMED MOHAMMED NASSER, and KHALED AHMED ISA, are natives of Yemen who distributed khat received from defendant YONIS MUHUDIN ISHAK in Brooklyn, New York, among other places.

7. ABDI OMAR ABDI and ABOKOR GURREH are natives of Somalia who distributed khat received from defendant YONIS MUHUDIN ISHAK in Columbus, Ohio, among other places.

8. Khat is derived from the leaves and of the plant *Catha edulis*, which is a flowering shrub native to East Africa and the Arabian Peninsula.

9. Fresh khat leaves contain the drug cathinone, which is a stimulant. Cathinone is a Schedule I controlled substance under the Controlled Substances Act. 21 C.F.R. § 1308.11(f).

10. Khat is typically ingested by chewing its leaves, although khat leaves may also be used to brew a "tea" or added to food.

11. Khat is used primarily by people from the Middle East and North Africa.

## MANNER AND MEANS OF THE CONSPIRACIES

12. It was part of the conspiracies that the defendants and other co-conspirators, known and unknown to the grand jury, played different roles, took upon themselves different tasks, and participated in the affairs of the conspiracies through various criminal acts.

13. It was further part of the conspiracies that defendant YONIS MUHUDIN ISHAK arranged for the importation of khat into the United States.

14. It was further part of the conspiracies that human couriers would transport a mixture and substance containing cathinone into the United States from other nations, including

England, the Netherlands, and Canada.

15. It was further part of the conspiracies that shipments of mixtures containing cathinone were shipped into the United States, and between various states, via the U.S. Postal Service, DHL, FedEx, and United Parcel Service.

16. It was further part of the conspiracies to take measures to ensure the freshness of, and preserve the cathinone content of, the khat.

17. It was further part of the conspiracies that, when shipped into the United States, the khat was generally packaged as bundles and wrapped in newspaper or banana leaves to retain moisture and freshness and to preserve the cathinone content of the khat.

18. It was further part of the conspiracies to distribute khat in places such as Alabama, California, Georgia, Illinois, Iowa, Maine, Massachusetts, Minnesota, New Jersey, New York, North Dakota, Ohio, Tennessee, Virginia, Washington, D.C., and Washington.

19. It was further part of the conspiracies that members of the conspiracies obtained quantities of a mixture containing cathinone from sources of supply and "broke down" those quantities into smaller quantities for resale.

20. It was further part of the conspiracies that the members of the conspiracies obtained khat from defendant YONIS MUHUDIN ISHAK on an "as needed" and an "as available" basis in order to distribute the khat to others.

21. It was further part of the conspiracies that the members of the conspiracies distributed khat to customers.

22. It was further part of the conspiracies that the defendants derived money and other benefits from their unlawful activities.

23. It was further part of the conspiracies that the defendants used telephones, including cellular telephones, to facilitate their drug trafficking activities and discuss the distribution of khat.

24. It was further part of the conspiracies that defendant YONIS MUHUDIN ISHAK would use e-mail to send to khat suppliers in Europe and elsewhere addresses in the United States to which defendant YONIS MUHUDIN ISHAK wanted the khat suppliers to send packages containing khat.

25. It was further part of the conspiracies that the defendants used various methods to conceal the conspiracies and their unlawful drug distribution activities in order to ensure the continuing existence and success of the conspiracies.

26. It was further part of the conspiracies to use aliases to prevent the detection of the conspiracies.

27. It was further part of the conspiracies to refer to khat using code words, including but not limited to "babies" and "CDs."

28. It was further part of the conspiracies for conspirators to pose as taxi drivers and to drive cars labeled as taxis to distribute khat.

29. It was further part of the conspiracies for defendant YONIS MUHUDIN ISHAK to use rental vehicles to transport khat, and to drop off and pick up khat couriers from airports.

30. It was further part of the conspiracies to have shipments of khat delivered to rented mailboxes and addresses not associated with the leadership of the conspiracies.

31. It was further part of the conspiracies to transmit proceeds from the sale of khat to individuals, including khat suppliers, located in England, Somalia, Uganda, and Kenya.

32. It was part of the conspiracies that defendant YONIS MUHUDIN ISHAK knowingly accepted the proceeds of drug trafficking from co-conspirators, disguised the source of the funds, and that defendant YONIS MUHUDIN ISHAK and other indicted and unindicted co-conspirators transmitted funds in interstate and foreign commerce to suppliers of khat and others.

33. It was further part of the conspiracies that defendant YONIS MUHUDIN ISHAK and other indicted and unindicted co-conspirators would transmit money to persons in foreign nations via money transfer companies such as Dahabshiil, Inc., Amaana Money Transfer, Iftin Express, Kaah, and Qaran Express.

34. It was further part of the conspiracies that defendant OSMAN YUSUF served as the manager of Dahabshiil, Inc.'s Northern Virginia office, located in Falls Church, Virginia, and assisted in the transfer of funds to khat supplies and others.

35. It was further part of the conspiracies that defendant ABDIRAHMAN ABSHIR JIBRIL worked at the Dahabshiil, Inc.'s Northern Virginia office, located in Falls Church, Virginia, and assisted in the transfer of funds to khat supplies and others.

36. It was further part of the conspiracies that defendants such as YONIS MUHUDIN ISHAK, ABDULKADIR ALI ISSE, SUADO MOHAMED ALI, HASSAN HASSAN, ISMAIL MOHAMUD ABDI, and ABDI MUHUMED, oftentimes using aliases, transmitted money to persons in foreign countries, including khat suppliers.

## OVERT ACTS

37. In furtherance of the conspiracies and to effect the objects thereof, the defendants

committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

    a.    At various times after January 2005, defendant YONIS MUHUDIN ISHAK would recruit couriers to transport khat from Europe to the United States;

    b.    At various times after January 2005, defendant YONIS MUHUDIN ISHAK would arrange the international flights of couriers to fly from the United States to Europe and back to transport khat from Europe to the United States;

    c.    At various times after January 2005, defendants YONIS MUHUDIN ISHAK and ABDULKADIR ALI ISSE would drive to various airports to pick up and drop off couriers who were scheduled to transport khat from Europe to the United States;

    d.    At various times after January 2005, defendant YONIS MUHUDIN ISHAK would travel to and from Ohio, New York, New Jersey, Pennsylvania, Washington, D.C., and Virginia, to distribute khat to other co-conspirators;

    e.    On or about February 16, 2005, an unindicted co-conspirator transported approximately 122.6 pounds of khat into the United States;

    f.    On or about March 4, 2005, an unindicted co-conspirator transported approximately 114 pounds of khat into the United States;

    g.    On or about March 23, 2005, an unindicted co-conspirator transported approximately 90 pounds of khat into the United States;

    h.    On or about April 27, 2005, an unindicted co-conspirator transported approximately 49 pounds of khat into the United States;

i. On or about June 6, 2005, an unindicted co-conspirator transported approximately 80 pounds of khat into the United States;

j. On or about September 1, 2005, an unindicted co-conspirator transported approximately 65 pounds of khat into the United States;

k. On or about October 13, 2005, an unindicted co-conspirator transported approximately 50 pounds of khat into the United States;

l. On or about October 15, 2006, an unindicted co-conspirator transported approximately 60 pounds of khat into the United States;

m. On or about July 19, 2007, an unindicted co-conspirator transported approximately 70 pounds of khat into the United States;

n. On or about August 3, 2009, a package containing a mixture containing cathinone was sent from London, England to the Sterling, Virginia address of an unindicted co-conspirator;

o. On or about August 12, 2009, an unindicted co-conspirator transported approximately 60 pounds of khat into the United States;

p. On or about August 24, 2009, an unindicted co-conspirator transported approximately 60 pounds of khat into the United States;

q. On or about November 1, 2009, an unindicted co-conspirator transported approximately 72 pounds of khat into the United States;

r. On or about November 5, 2010, defendant YONIS MUHUDIN ISHAK traveled to New York and retrieved a package of khat at a UPS store;

s. On or about November 5, 2010, defendant YONIS MUHUDIN

ISHAK transferred bundles of khat to defendant MOHEEB AHMED MOHAMMED NASSER at NASSER's Brooklyn residence;

  t. On or about February 25, 2011, an unindicted co-conspirator transported approximately 73 pounds of khat into the United States;

  u. On or about October 25, 2009, a conspirator transmitted proceeds of khat sales to an individual in Bakaraha, Somalia;

  v. On or about June 23, 2009, a conspirator transmitted proceeds of khat sales to an individual in Nairobi, Kenya;

  w. On or about June 23, 2009, a conspirator transmitted proceeds of khat sales to an individual in Ottawa, Canada;

  x. On or about November 6, 2010, defendant YONIS MUHUDIN ISHAK placed a telephone call to defendant ABDULKADIR ALI ISSE, and the two discussed the distribution of khat to other co-conspirators;

  y. On or about October 7, 2010, defendant YONIS MUHUDIN ISHAK and defendant ABDI MUHUMED conversed on the telephone about the receipt and distribution of khat.

## COUNT ONE

### Conspiracy to Possess With Intent to Distribute Cathinone
(21 U.S.C. § 846)

38. Paragraphs 1 through 37 of this Superseding Indictment are specifically re-alleged and incorporated by reference as if they were fully set forth here.

39. From in and around February 14, 2005 to in and around May 18, 2011, the exact dates being unknown to the grand jury, within the Eastern District of Virginia and elsewhere, the defendants, **YONIS MUHUDIN ISHAK** (also known as "Yunis Sheikal," "Shak," "Yunis Mohodin Ishak," "Yonis Mulardin Ishak," "Tonis M. Ishak," "Yunis Muhudin Ishaq," "Yunis M. Sheeaq Ishaq," "Anab Ahmed Hassan," and "Ashak"), **ABDULKADIR ALI ISSE** (also known as "Abdul" and "Burane"), **SUADO MOHAMED ALI** (also known as "Suada Mohamed Ali," and "Sue"), **HIBO MUSSE SAMANTAR** (also known as "Fadumo"), **AHMED ALI HASSAN** (also known as "Dirir"), **OSMAN YUSUF, ABDIRAHMAN ABSHIR JIBRIL** (also known as "Abdi Ali Mire"), **HARUN SALHAN, HASSAN HASSAN** (also known as "Elay"), **ISMAIL MOHAMUD ABDI, ABDI MUHUMED** (also known as "Juba"), **LUTF MOHAMED ALBUKHAITI, NAGI MANSOR SEAA ALASHMALI** (also known as "Mohamed Albokhiti"), **MOHEEB AHMED MOHAMMED NASSER, KHALED AHMED ISA** (also known as "Khalid Ahmed Aesaa," "Adnan," "Hamza," and "Khaled A. Aesa"), **ABDI OMAR ABDI, ABOKOR GURREH** (also known as "Mubarak," "Mohamed Farhan," and "Farhan M. Mohamed"), did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with others, both known and unknown to the grand jury, to unlawfully, knowingly and intentionally distribute, and to possess with intent to distribute, a mixture and substance

11

containing a detectable amount of cathinone, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

      (In violation of Title 21, United States Code, Section 846.)

## COUNT TWO

### Conspiracy to Commit Money Laundering
(18 U.S.C. § 1956(h))

40. Paragraphs 1 through 37 of this Superseding Indictment are specifically re-alleged and incorporated by reference as if they were fully set forth here.

41. Beginning in and around 2005, and continuing through in and around May 2011, in the Eastern District of Virginia and elsewhere, the defendants, **YONIS MUHUDIN ISHAK** (also known as "Yunis Sheikal," "Shak," "Yunis Mohodin Ishak," "Yonis Mulardin Ishak," "Tonis M. Ishak," "Yunis Muhudin Ishaq," "Yunis M. Sheeaq Ishaq," "Anab Ahmed Hassan," and "Ashak"), **ABDULKADIR ALI ISSE** (also known as "Abdul" and "Burane"), **SUADO MOHAMED ALI** (also known as "Suada Mohamed Ali," and "Sue"), **OSMAN YUSUF**, **ABDIRAHMAN ABSHIR JIBRIL** (also known as "Abdi Ali Mire"), **HARUN SALHAN**, **HASSAN HASSAN** (also known as "Elay"), **ISMAIL MOHAMUD ABDI**, **ABDI MUHUMED** (also known as "Juba"), **LUTF MOHAMED ALBUKHAITI**, **KHALED AHMED ISA** (also known as "Khalid Ahmed Aesaa," "Adnan," "Hamza," and "Khaled A. Aesa"), **ABDI OMAR ABDI**, **ABOKOR GURREH** (also known as "Mubarak," "Mohamed Farhan," and "Farhan M. Mohamed"), did knowingly combine, conspire, confederate, and agree with each other and others, known and unknown to the grand jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

(a) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to distribute, and to possess with intent to

13

distribute, controlled substances, in violation of Title 21, United States Code, Section 846, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) to transport, transmit and transfer and attempt to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(c) to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, conspiracy to distribute, and to possess with the intent to distribute, controlled substances, in violation of Title 21, United States Code, Section 846, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

(All in violation of Title 18, United States Code, Section 1956(h).)

## FORFEITURE

43. The defendants are hereby on notice that, pursuant to Federal Rule of Criminal Procedure 32.2:

(i) if convicted of Count 1 in this Superseding Indictment, the defendants shall forfeit any property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as the result of such violation; and

(ii) if convicted of Count 2 in this Superseding Indictment, the defendants shall forfeit all property, real or personal, involved in the offense.

The property subject to forfeiture includes, but is not limited to the following:

(a) a sum of money equal to $5,596,080.00 in United States currency, representing the amount of proceeds obtained as a result of the conspiracy to distribute controlled substances;

(b) real property and a residence located at 223-19 106th Avenue, Queens, New York, 11429;

(c) real property and a store located at 22020 Hempstead Avenue, Jamaica, New York, 11429;

(d) real property and a store located at 422 Ditmas Avenue, Brooklyn, New York, 11218;

(e) real property and a store located at 424 Ditmas Avenue, Brooklyn, New York, 11218;

(f) real property and a delicatessen located at 516 New Lots Avenue, Brooklyn, New York, 11207;

(g) real property and a delicatessen located at 797 Stanley Avenue, Brooklyn, New York, 11207;

(h) real property and a structure, including a warehouse, located at 452 East 99th Street, Brooklyn, New York, 11236;

(i) real property and a delicatessen located at 3602 Neptune Avenue, Brooklyn, New York, 11224;

(j) real property and a store located at 507 Cortelyou Road, Brooklyn, New York, 11218;

(k) the defendants shall forfeit substitute property, up to the value of the forfeitable property described above (i.e., $5,596,080.00 in United States currency), if by any act or omission of the defendants, the $5,596,080.00 in United States currency, or any portion thereof:

    (1) cannot be located upon the exercise of due diligence;

    (2) has been transferred or sold to, or deposited with, a third party;

    (3) has been placed beyond the jurisdiction of the Court;

    (4) has been substantially diminished in value; or

    (5) has been commingled with other property which cannot be divided without difficulty.

(Pursuant to Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982.)

A TRUE BILL

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____
FOREPERSON

Neil H. MacBride
UNITED STATES ATTORNEY

*Mary Daly*
_____
Mary K. Daly
Assistant United States Attorney
Michael J. Frank
Claire M. Murray
Special Assistant United States Attorneys