FILED
IN OPEN COURT

JAN − 5 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:11-CR-261 |
| | ) | |
| ABDULKADIR ALI ISSE, | ) | Hon. T. S. Ellis, III |
|    a.k.a "Abdul," | ) | |
|    a.k.a "Burane," | ) | |
| | ) | |
|    Defendant. | ) | |

STATEMENT OF FACTS

The parties stipulate that the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. From in and around September 2005 to in and around May 2011, in the Eastern District of Virginia and elsewhere, the defendant, ABDULKADIR ALI ISSE, did unlawfully, knowingly, and intentionally conspire to distribute a mixture and substance containing a detectable amount of cathinone, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

2. During the course of the conspiracy and in furtherance of his participation in the conspiracy, the defendant worked in concert with others to obtain quantities of khat, which contained cathinone, and to distribute that khat to customers within the Eastern District of Virginia and elsewhere. The defendant and his co-conspirators used human couriers and the postal system to import khat from suppliers in England. Once the khat was imported, the defendant distributed, and conspired with co-conspirators to distribute, some of the khat to others

in exchange for payment. The conspiracy specifically sought to distribute fresh khat because it was more potent than khat that was not fresh, and was therefore more profitable to sell. Accordingly, during the conspiracy, the co-conspirators made efforts to preserve the freshness of the khat they imported and distributed.

3. In furtherance of the conspiracy, co-conspirator Yonis Muhudin Ishak hired human couriers to travel to the United Kingdom and elsewhere, on pre-paid, round-trip tickets to retrieve khat from sources of supply and smuggle the khat into the United States in their luggage. At various airports in the United States, the defendant frequently would retrieve the couriers and the khat they were carrying. The defendant frequently would transport couriers and the khat that the couriers had imported into the United States.

4. In addition, the defendant and co-conspirator Yonis Muhudin Ishak arranged for the shipment of khat into the United States via the U.S. Postal Service, DHL, FedEx, and the United Parcel Service. To conceal their activities from law enforcement, many of these parcels were shipped to addresses not associated with the defendant or Yonis Muhudin Ishak, including UPS stores in New York, New Jersey, and elsewhere.

5. Once the defendant and co-conspirator Yonis Muhudin Ishak obtained khat, they would distribute the khat to various co-conspirators for further distribution, including but not limited to: Suado Mohamed Ali, Hibo Musse Samantar, Ahmed Ali Hassan, Osman Yusuf, Abdirahman Abshir Jibril, Harun Salhan, Ismail Mohamud Abdi, Abdi Muhumed, Lutf Mohamed Albukhaiti, Nagi Mansor Seaa Alashmali, Moheeb Ahmed Mohammed Nasser, Khaled Ahmed Isa, Abdi Omar Abdi, and Abokor Gurreh.

6. In furtherance of the conspiracy, the defendant and some of his co-conspirators would transmit khat proceeds to khat suppliers overseas via various money transfer companies, such as Qaran Express, Amaana Money Transfer, Iftin Express, and Dahabshiil, Inc. The defendant and his co-conspirators frequently used false names and identifiers to send money through these companies to conceal the nature of the funds and to hide their activities from law enforcement. During the conspiracy, co-conspirator Osman Yusuf was the Northern Virginia branch manager for Dahabshiil, Inc., and Abdirahman Abshir Jibril was an employee at the Northern Virginia Dahabshiil branch. The defendant and co-conspirator Yonis Muhudin Ishak would provide Osman Yusuf and Abdirahman Abshir Jibril with quantities of khat in return for their assistance in laundering khat proceeds overseas through Dahabshiil, Inc.

7. It was part of the conspiracy that the defendant and his co-conspirators often communicated over cellular telephones about their khat trafficking operation. Frequently the defendant and his co-conspirators would use code words to disguise the fact that they were speaking about khat.

3. On or about September 21, 2005, the defendant was intercepted by U.S. Customs and Border Protection officers at the Philadelphia International Airport attempting to smuggle 18.2 kilograms of khat into the United States from London, England, in his luggage. The defendant was attempting to smuggle this khat into the country on behalf of co-conspirator Yonis Muhudin Ishak.

4. In or about October of 2010, during and in furtherance of the conspiracy, the defendant transmitted at least $3,000 to a known supplier of khat located in England.

5. In or about October of 2010, the defendant attempted to use a human courier to import khat from London, England. This attempt failed when the courier was intercepted by law enforcement and incarcerated.

6. In or about October of 2010, the defendant attempted to use the U.S. Postal Service to import a parcel containing khat from London. The attempt failed when agents of the Department of Homeland Security and the U.S. Postal Inspection Service intercepted this parcel and sent it to the Drug Enforcement Administration Laboratory for testing. The contents of the parcel tested positive for cathinone.

7. For a period of time, while Yonis Muhudin Ishak was on federal probation, the defendant assumed Ishak's role and ran the khat-distribution conspiracy that Ishak normally supervised. During this time, the defendant imported khat from England and other places, distributed it to street-level dealers in the United States, and instructed those dealers to distribute it to certain customers and prescribed prices. The organization the defendant organized and led included at least ten other individuals.

8. The defendant personally distributed, or it was reasonably foreseeable to the defendant that his co-conspirators distributed in furtherance of the conspiracy, at least 4,000,000 grams of khat.

10. The acts taken by the defendant, ABDULKADIR ALI ISSE, in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may

4

have engaged in illegal activities. The defendant further acknowledges that he is obligated under his plea agreement to provide additional information about this case beyond that which is described in this statement of facts.

11. The Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether the plea agreement is presented to or accepted by a court. Moreover, the defendant waives any rights that the defendant may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By: *Mary Daly*
Mary K. Daly
Assistant United States Attorney
Michael J. Frank
Special Assistant United States Attorney

5

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Abdulkadir Ali Isse, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Abdulkadir Ali Isse
Defendant

I am Abdulkadir Ali Isse's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his/her decision to stipulate to these facts is an informed and voluntary one.

_____
Eric E. Clingan, Esquire
Attorney for Abdulkadir Ali Isse