IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 1:11-CR-261 |
| | ) | |
| v. | ) | Honorable T. S. Ellis, III |
| | ) | |
| YONIS MUHUDIN ISHAK, | ) | Sentencing: March 9, 2012 |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The government has reviewed the presentence report for this defendant and has no material objections or corrections. The government agrees that the advisory Guidelines range has been accurately calculated as 57 to 71 months of incarceration in Zone D and recommends a sentence at the low end of that range. The government also recommends three years of supervised release. The government does not request a fine.

**I.   Background**

On September 29, 2011, the defendant pleaded guilty to Count 1 of the Superseding Indictment. In pleading guilty, the defendant admitted that, from in and around September 2005 to in and around May 2011, he unlawfully, knowingly, and intentionally conspired to distribute a mixture and substance containing a detectable amount of cathinone, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

In furtherance of his participation in this conspiracy, the defendant worked in concert with others to obtain quantities of khat that contained cathinone, and to distribute that khat to customers within the Eastern District of Virginia and elsewhere. Specifically, the defendant, who was based in Arlington, Virginia, was responsible for importing khat from overseas, and

distributing wholesale quantities of khat to various domestic khat distributors in Virginia, Maryland, Ohio, New York, New Jersey and elsewhere. Because the importation of khat is illegal, the defendant used human couriers and the postal system to import khat from suppliers in England. Once the khat was imported, the defendant distributed and conspired to distribute the khat to others in exchange for payment. The conspiracy specifically sought to distribute fresh khat because it was more potent than khat that was not fresh, and was therefore more profitable to sell. Accordingly, during the conspiracy, the defendant and his co-conspirators made efforts to preserve the freshness of the khat they imported and distributed.

      The defendant hired human couriers to travel to the United Kingdom, and elsewhere, on pre-paid round-trip tickets to retrieve khat from overseas sources of supply, and smuggle khat back into the United States inside their luggage. Co-conspirator Abdulkadir Isse often was tasked with picking up these couriers from various airports and retrieving the smuggled khat on behalf of the defendant. In addition, the defendant arranged for the shipment of khat into the United States via the U.S. Postal Service, DHL, FedEx and United Parcel Service. To conceal his activities from law enforcement, the defendant would have these parcels shipped to addresses that were not associated with him, including UPS stores in New York, New Jersey and elsewhere. Additionally, the defendant's sources of supply would not address these parcels to the defendant using his real name, but would address the parcels using false names and aliases for the defendant.

Once the defendant obtained khat, he would provide it to various co-conspirators for re-distribution, including but not limited to: Khaled Isa, Nagi Alashmali, Lutf Albukhaiti and Moheeb Nasser in New York; Abdi Omar Abdi and Abokor Gurreh in Ohio; Harun Salhan and Abdi Muhumed in Maryland; and Suado Ali, Hibo Samantar, Ahmed Hassan, Hassan Hassan and Ismail Abdi in Virginia. Using various methods, these distributors would pay the defendant for the khat and/or wire khat proceeds overseas on behalf of the defendant.

The defendant and his co-conspirators would transmit khat proceeds to khat suppliers overseas via various money transfer companies, such as Amaana Money Transfer, Iftin Express, and Dahabshiil, Inc. The defendant and his co-conspirators frequently used false names and identifiers to send money through these companies to conceal the nature of the funds, and to hide their activities from law enforcement. During the conspiracy, co-conspirator Osman Yusuf was the Northern Virginia branch manager for Dahabshiil, Inc., and Abdirahman Jibril was an employee at the Northern Virginia Dahabshiil branch. The defendant would provide Yusuf and Jibril with personal use quantities of khat in return for their assistance in laundering khat proceeds overseas through Dahabshiil, Inc.

The defendant personally distributed, or it was reasonably foreseeable to the defendant that his co-conspirators distributed in furtherance of the conspiracy, at least 4,000,000 grams of khat.

## II.  Applicable Sentencing Law

The Sentencing Guidelines promulgated by the Sentencing Commission are advisory, although sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264, 125 S. Ct. 738, 767 (2005). "The Guidelines require the district judge to give due consideration to the relevant sentencing range . . . ." *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion). In "the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109, 128 S. Ct. 558, 574 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350, 127 S.Ct. 2456, 2465 (2007)). Accordingly, a "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

The "Guidelines should be the starting point and the initial benchmark," keeping in mind that a sentencing court "may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a), subject to appellate review for 'reasonableness.'" *Pepper v. United States*, 131 S. Ct. 1229, 1241 (2011). Although "the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46, 128 S. Ct. 586, 594 (2007). A sentencing court, therefore, "must first calculate the Guidelines range, and then consider what sentence is

appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 555 U.S. 350, 351, 129 S. Ct. 890, 891-92 (2009).

Section 3553 states that the court should consider the nature and circumstances of the offense and the history and characteristics of the defendant. In addition, the court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B). The court should also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

### III.  Argument

#### A.  The PSR Properly Calculates the Applicable Guidelines Range

The defendant has raised two objections to the Guidelines calculation set forth in the PSR. Specifically, he argues: (1) that he should not receive a two-level enhancement under Guidelines Section 3C1.2 for reckless endangerment during flight, and (2) that he should not receive a two-level enhancement under Section 2D1.1(b)(14)(C) because he played an aggravating role and was directly involved in the importation of a controlled substance. As discussed below, the defendant's arguments lack merit.

##### 1.  The Two-Level Enhancement Under U.S.S.G. § 3C1.2 Applies

The PSR includes a two-level enhancement under Section 3C1.2 based on the defendant's December 14, 2005 arrest and January 25, 2007 conviction for Assault of a Federal Officer. This is relevant conduct under U.S.S.G. § 1B1.3(a)(1) because this act occurred during

5

the commission of the offense of conviction, as well as in the course of attempting to avoid detection or responsibility for that offense. *See* U.S.S.G. § 1B1.3(a)(1).[1]

The defendant argues that the inclusion of this enhancement is not warranted because 1) there was no actual physical contact with the law enforcement officers, and 2) the New Jersey Court, in sentencing the defendant for the underlying offense, did not apply the enhancement at Section 3C1.2. He is incorrect.

First, Section 3C1.2 does not require actual physical contact or injury. Section 3C1.2 only requires that the defendant "recklessly created a substantial <u>risk</u> of death or serious bodily injury to another person in the course of fleeing from the law enforcement officer. *See* U.S.S.G. § 3C1.2 (emphasis added); *United States v. Buie*, 441 Fed. Appx. 173, 177 (4th Cir. 2011) (enhancement under Section 3C1.2 was warranted where defendant led police on a high speed chase before he was apprehended). The facts underlying the defendant's 2007 conviction clearly demonstrate that the defendant's actions created a substantial risk of serious bodily injury. As immigration agents identified themselves to the defendant and approached his vehicle, the defendant attempted to evade the agents by putting his car in reverse, and in the process grazed one of the agents with the defendant's side-view mirror, forcing the agent against another vehicle, as the defendant fled the parking lot. Thus, the defendant clearly put at least one agent at risk of serious bodily injury while fleeing the parking lot.

Further, that the United States District Court in New Jersey did not previously address the issue of a Section 3C1.2 enhancement is of no relevance. In fact, the Magistrate Judge in

---

[1] Had the Probation Department not deemed the defendant's assault conviction relevant conduct, the defendant's Criminal History Category would be II since he would have committed the instant offense while on probation. *See* U.S.S.G. § 4A1.1(d).

New Jersey was correct not to consider this enhancement at that time, because the enhancement itself was identical to the underlying offense; it was the crux of the crime and not an enhancement of another crime. Here, the Section 3C1.2 enhancement is appropriately applied because the 2005 offense is included as relevant conduct in calculating the Guidelines for the conspiracy to distribute cathinone.[2]

    2.    <u>The Two-Level Enhancement Under U.S.S.G. § 2D1.1(b)(14)(C) Applies</u>

The Presentence Report includes a two-level enhancement under Section 2D1.1(b)(14)(C) because the defendant received an adjustment under Section 3B1.1 (Aggravating Role) and the defendant was directly involved in the importation of a controlled substance. The defendant argues that the two-level enhancement under Section 2D1.1(b)(14)(C) is not warranted because ten samples of khat that tested positive for cathinone were tested prior to November 2010, when Section 2D1.1(b)(14)(C) was added to the sentencing guidelines. The defendant's argument is without merit.

Generally, a District Court is instructed to apply the version of the Sentencing Guidelines that were in place at the time of a defendant's sentencing, unless applying the current

---

[2] An argument that the defendant does not raise, but which the Government will address, is whether the Double Jeopardy Clause is implicated when a sentencing enhancement has been applied for conduct that the defendant has previously been prosecuted for in a separate action. The answer is "no." The Double Jeopardy Clause does not preclude enhancing a defendant's sentencing based on prior conduct that was the subject of a separate prosecution. *See Witte v. United States*, 515 U.S. 389, 405-06 (1995) ("consideration of relevant conduct in determining a defendant's sentence within the legislatively authorized punishment range does not constitute punishment for that conduct" and "does not violate the Double Jeopardy Clause's prohibition against the imposition of multiple punishments for the same offense"). Consideration at sentencing of information about the defendant's conduct does not result in "punishment" for any offense other than the one for which the defendant is being sentenced. *Id.*; *see also United States v. Watts*, 519 U.S. 148, 155 (1997). Thus, the Presentence Report correctly applied a two-level enhancement under Section 3C1.2.

Guidelines would amount to a violation of the Ex Post Facto Clause. U.S.S.G. § 1B1.11(a), (b)(1)(2011)). In that case, the Guidelines instructed the sentencing court to apply the version that was in place at the time the defendant's offense was committed. *Id.* When the defendant's offense is a conspiracy that continues beyond the promulgation date of an applicable Guideline provision, a Court's use of that provision in calculating the Guideline range does not violate the Ex Post Facto Clause. *United States v. Kapirulja*, 314 Fed. Appx. 337, 342 (2d Cir. 2008) ("use of the November 2002 Guidelines Manual was proper because the court found that the conspiracy continued into 2002"); *United States v. Aviles*, 518 F.3d 1228, 1230-31 (11th Cir. 2008) ("A defendant who is convicted of a conspiracy that began before, but continued after, a Guidelines amendment became effective may be sentenced based on the amendment without triggering any ex post facto concerns."); *United States v. Andres*, 178 Fed. Appx. 736, 741 (9th Cir. 2006) ("Here, Andres pled guilty to and Mina was convicted of participating in a conspiracy that did not terminate until December 2001—*after* the effective date of the 2001 edition (11/1/2001)—so use of that version was proper.").

When the defendant pleaded guilty on September 29, 2011, the defendant admitted his involvement in a conspiracy distribute cathinone, in violation of 21 U.S.C. § 846, for a period of time continuing until May 2011, well after Section 2D1.1(b)(14)(C) was added to the sentencing guidelines. Because Section 2D1.1(b)(14)(C) was in effect prior to the conspiracy being completed, applying this enhancement does not violate the Ex Post Facto Clause. *See United States v. Dover*, 47 Fed. Appx. 214, 216 (4th Cir. 2002) (holding that a particular Guideline provision was applicable because it was "in effect before the conspiracy was completed."); *see also United States v. Siddons*, 660 F.3d 699, 705 (3d Cir. 2011) (holding that it was proper for

8

the district court to apply a Guideline provision that was promulgated after the defendant's crime had started but before his crime was completed). Put another way, this provision applies to conspiracies in existence after its promulgation date.

Accordingly, this Court should overrule both of the defendant's objections to the PSR's calculation of the sentence suggested by the Guidelines.

**B.      A Sentence at the Low End of the Guideline Range is Appropriate**

In this case, a sentence at the low end of the range suggested by the Sentencing Guidelines range is appropriate in light of the 18 U.S.C. § 3553(a) factors. A sentence at the low end of the range would take into consideration the nature and circumstances of the offense charged, including the quantity of khat involved in the conspiracy. A sentence within the suggested range would reflect the seriousness of the defendant's role in the offense—he was the leader of the conspiracy —and the danger the defendant's conduct posed to the community.

It is also important for the defendant's sentence to deter others from committing similar crimes. The sentence must also take into consideration the gravity of the offense and the duration of the offense. The sentence also should promote respect for the law and must provide a just punishment for the offense. A sentence at the low end of the range suggested by the Guidelines would perform these functions, particularly in light of the defendant's role as the leader of the conspiracy. Likewise, this sentence would assist in deterring others who are involved in the trafficking of khat and cathinone.

A sentence at the low end of the range would also help avoid unwarranted sentencing disparities among similarly-situated defendants. A key purpose of the Sentencing Guidelines is to prevent unwarranted disparities in sentences. *Booker*, 543 U.S. at 264-65, 125 S. Ct. at 767;

*United States v. Clark*, 434 F.3d 684, 687 (4th Cir. 2006) ("The Guidelines sought to avoid only the unwarranted disparities that existed in the federal criminal justice system . . . ."). Indeed, the Sentencing Commission is required by law to create and maintain the Guidelines such that they result in fair and equitable sentences. *See* 28 U.S.C. § 991(b)(1)(B) (require the Commission to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct"); *Gall v. United States*, 552 U.S. 38, 54, 128 S. Ct. 586, 599 (2007) ("avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges"); *United States v. Johnson*, 445 F.3d 339, 341-44 (4th Cir. 2006) (noting that the Guidelines have incorporated "Congress's sentencing objectives" articulated in 18 U.S.C. § 3553(a)). In this case, co-defendant Hassan Hassan, a local khat distributor, has been sentenced to 10 months of imprisonment. However, the defendant was the leader of this international cathinone trafficking conspiracy, and therefore it is only appropriate that he should receive a higher sentence than many of his domestic co-conspirators. Sentencing the defendant at the low end of the range suggested by the Guidelines ensures that his sentence is neither disparately severe nor disparately lenient.

In balancing the relevant facts of the case and the 3553(a) factors, the United States believes that a sentence at the low end of the 51- to 71-month range suggested by the Sentencing Guidelines would yield the most appropriate sentence.

## IV. Conclusion

The government recommends a sentence at the low end of the range suggested by the Sentencing Guidelines.  The government also recommends three years of supervised release.  The government does not request a fine.

          Respectfully Submitted,

          Neil H. MacBride
          United States Attorney

By:     /s/
          Mary K. Daly
          Assistant United States Attorney
          Michael J. Frank
          Special Assistant United States Attorney
          Attorneys for the United States of America
          United States Attorney's Office
          Justin W. Williams U.S. Attorney's Building
          2100 Jamieson Avenue
          Alexandria, Virginia 22314
          Phone:  703-299-3700
          Fax: 703-837-8242
          Mary.K.Daly@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on the 2nd day of March, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel for the defendant.

                                 /s/
                            Mary K. Daly
                            Assistant United States Attorney
                            Attorney for the United States of America
                            United States Attorney's Office
                            Justin W. Williams U.S. Attorney's Building
                            2100 Jamieson Avenue
                            Alexandria, Virginia 22314
                            Phone: 703-299-3700
                            Fax: 703-837-8242
                            Mary.K.Daly@usdoj.gov