IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:11-CR-261 |
| | ) | |
| ISMAIL MOHAMUD ABDI, *et al.*, | ) | Honorable T. S. Ellis, III |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S MEMORANDUM REGARDING ANY
## MOTION FOR JUDGMENT OF ACQUITTAL BY DEFENDANT ISMAIL ABDI

The UNITED STATES OF AMERICA, by its attorneys, Neil H. MacBride, United

States Attorney for the Eastern District of Virginia, Mary K. Daly, Assistant United States

Attorney, and Michael J. Frank, Special Assistant United States Attorney, respectfully submits

this Memorandum to assist the Court in the event that defendant Ismail Abdi's moves for a

judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  Defendant

Ismail Abdi is charged in both Count One and Count Two of the Superseding Indictment.

**I.      Standard**

"A defendant challenging the sufficiency of the evidence to support his conviction bears

'a heavy burden.'"  *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting

*United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995)).  When addressing a sufficiency

challenge, a reviewing court "must view the evidence in the light most favorable to the

government and inquire whether any rational trier of fact could find the essential elements of the

crime beyond a reasonable doubt."  *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997)

(citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The jury, not the reviewing court,

assesses the credibility of the witnesses and resolves any conflicts in the evidence presented.  *Id.*

"[I]f the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." *Id.* (quoting *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994)).

A conviction must be sustained if there is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Higgs*, 353 F.3d 281, 313 (4th Cir. 2003) (quotation omitted); *United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001) (if the record reflects that the government presented substantial evidence from which a reasonable jury could convict, the verdict must be upheld). Under this standard, the uncorroborated testimony of a single witness – even when that witness is an accomplice or an informant – may be sufficient to support a conviction. *See, e.g., United States v. Wilson*, 115 F.3d 1185, 1190 (4th Cir. 1997); *United States v. Manbeck*, 744 F.2d 360, 392 (4th Cir. 1984).

## II.      Conspiracy to Distribute, and to Possess with Intent to Distribute, Cathinone

In Count One, defendant Ismail Abdi is charged with Conspiracy to Distribute, and to Possess with Intent to Distribute, Cathinone, in violation of 21 U.S.C. §§ 841(a)(1) and 846. "Conviction for conspiracy to distribute narcotics under 21 U.S.C. § 846 requires proof beyond a reasonable doubt of three elements: (1) 'an agreement between two or more persons to engage in conduct that violates a federal drug law'—here, to distribute or possess narcotics with intent to distribute; '(2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy.'" *United States v. Hickman*, 626 F.3d 756, 763 (4th Cir. 2010) (quoting *United States v. Kellam*, 568 F.3d 125, 139 (4th Cir. 2009)); *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998). The elements of distribution of narcotics

2

are "(1) distribution of [a] narcotic controlled substance, (2) knowledge of the distribution, and (3) intent to distribute the narcotic controlled substance." *United States v. Randall,* 171 F.3d 195, 209 (4th Cir. 1999). "The government can satisfy the knowledge requirement by showing either that a defendant "actually knew of the conspiracy . . . or that he was willfully blind to it by 'purposely closing his eyes to avoid knowing what was taking place around him.'" *United States v. McIver*, 470 F.3d 550, 563 (4th Cir. 2006) (quoting *United States v. Cropp*, 127 F.3d 354, 361 (4th Cir. 1997); *United States v. Ruhe*, 191 F.3d 376, 384 (4th Cir. 1999); *United States v. Schnabel*, 939 F.2d 197, 203 (4th Cir. 19991)).

"Once the Government proves a conspiracy, the evidence need only establish a slight connection between a defendant and the conspiracy to support conviction." *United States v. Green*, 599 F.3d 360, 367 (4th Cir. 2010) (citing *United States v. Brooks*, 957 F.2d 1138, 1147 (4th Cir. 1992)). The Government is not required to prove that a defendant knew all his co-conspirators or all of the details of the conspiracy, and guilt may be established even by proof that a defendant played only a minor role in the conspiracy. *United States v. Burgos,* 94 F.3d 849, 861 (4th Cir. 1996) (en banc). Nor does proof of guilt require a showing that a defendant personally committed an overt act. *United States v. Cardwell*, 433 F.3d 378, 391 (4th Cir. 2005). Furthermore, "the Government is not required to prove beyond a reasonable doubt that a defendant actually possessed narcotics to show beyond a reasonable doubt his knowing membership in a drug trafficking conspiracy. *Green*, 599 F.3d at 373 (citing *United States v. Collazo*, 732 F.2d 1200, 1205–06 (4th Cir. 1984)).

The following evidence, taken in the light most favorable to the prosecution, establishes each of the elements of Count One as to defendant Ismail Abdi.

1.      Co-conspirator Yonis Ishak identified defendant Ismail Abdi and testified that:

• By at least 2005, Ishak was involved in a khat-distribution business, although he suspended his business at various times;

• The organization distributed khat until around April or May 2011;

• The organization distributed khat, for further distribution to retail customers, in Virginia, New York, Maryland, and Ohio, among other places;

• The organization obtained the khat from suppliers based in the United Kingdom, among other places;

• Ishak knew defendant Ismail Abdi since about the mid-1990s;

• Ishak knew that defendant Ismail Abdi was a khat user;

• At Ishak's request, in late 2010, Ismail Abdi stored khat for Ishak in Ismail Abdi's refrigerator;

• One of the reasons that Ishak asked Abdi to store khat in his refrigerator was that Ishak believed federal agents were watching him and, thus, he did not want to leave khat in his (Ishak's) apartment;

• Ishak instructed defendant Ismail Abdi on how to store khat and preserve its freshness by wrapping it in aluminum foil;

• The amount of khat Ishak stored at Ismail Abdi's apartment varied, but Ishak estimated that he sometimes stored between 40 to 60 bundles of khat in Ismail Abdi's refrigerator;

• On direction examination, Ishak estimated that he personally took khat to Ismail Abdi four to five times; on cross-examination Ishak indicated it may have been less than this;

• Ishak stored khat at Ismail Abdi's apartment in part because he believed (correctly) that federal agents were conducting surveillance on him and, thus, he did not want to keep a lot of khat at his (Ishak's) apartment;

• Ismail Abdi did not want anyone to know that Ishak was storing khat at his (Ismail Abdi's) apartment and took measures to minimize detection because he (Ismail Abdi) knew that khat was unlawful in the United States;

4

- Ismail Abdi asked Ishak to transfer the khat (which was to be stored by Abdi) in a store parking lot near his apartment complex so that nobody would see Ismail Abdi obtaining the khat from Ishak;[1]

- Ishak paid Ismail Abdi for his efforts by providing him free khat;[2]

- Besides storing khat, defendant Ismail Abdi also distributed khat to an individual whom Ishak sent to Ismail Abdi's apartment to retrieve khat;

- Ishak generally gave Ismail Abdi two bundles of khat per week for his own consumption;

- Ishak spoke with Ismail Abdi on at least a weekly basis;[3]

- On cross-examination, Ishak stated that Ismail Abdi knew that Ishak was a khat dealer;[4]

- Ishak knew that khat was unlawful in the United States and took measures to help ensure that the police did not discover his khat-distribution business; and

- At Ishak's request, on two or three occasions, defendant Ismail Abdi sent money to Ishak's London-based khat suppliers.

2.    Ishak identified Government Exhibits 26-B through and including Exhibit 26-J as accurate transcripts of conversations Ishak had had with defendant Ismail Abdi.

---

[1] *United States v. Pruneda-Gonzalez*, 953 F.2d 190, 196-97 (5th Cir. 1992) (noting that jury could infer that defendant knowingly and intentionally joined criminal venture when he accompanied conspirators on tasks vital to criminal activity, which indicated knowledge of and participation in that criminal activity); *United States v. Chavez*, 947 F.2d 742, 745 (5th Cir. 1991) (stating that jury "was entitled to consider the unlikelihood that the owner of . . . a large quantity of narcotics would allow anyone not associated with the conspiracy to be present during the[ir] unloading").

[2] Recall that Postal Inspector Phil Garn, who testified as an expert, mentioned that members of khat distribution networks are sometimes paid with khat.

[3] Frequent contact among co-conspirators is also evidence that a co-conspirator joined a conspiracy knowing its intent.  *United States v. Mejia*, 600 F.3d 12, 20 (1st Cir. 2010); *United States v. Sells*, 477 F.3d 1226, 1236 (10th Cir. 2007).

[4] On cross-examination, Ismail Abdi's attorney suggested to Ishak that Ishak kept his khat dealing a secret from the Somali community.  Ishak soundly rejected that suggestion.

5

3.      On September 2, 2010, Ishak and defendant Ismail Abdi had a telephone call in which the following exchange occurred:

Ishak:  I am expecting some stuff on Saturday, but tomorrow I want to keep some stuff at your house.

Abdi:  Yeah, you're welcome, my friend.

\*      \*      \*

Abdi:  Just make sure you do not tell people.  Get your stuff slowly.

Gov't Ex. 26-B, page 2.  Ishak explained that the "stuff" that was being discussed was khat, and that Abdi instructed him not to tell people about storing khat at Abdi's apartment because Ismail Abdi did not want to attract the attention of authorities.  A "jury may infer the conspirator's knowledge and participation in the conspiracy from the surrounding circumstances," including his efforts to avoid detection by the police.  *United States v. Christian*, 786 F.2d 203, 211 (6th Cir.1986).  The jury can reasonably infer that Ismail Abdi's orders not to "tell people" and to remove the khat slowly were attempts to avoid detection by the police.  Furthermore, later in that same call, Ishak specifically informed Abdi that "the airplane will be landing tomorrow," which further let Ismail Abdi know that the khat was being imported into the United States.  Gov't Ex. 26-B, page 3.

4.      On September 3, 2010, in an intercepted telephone conversation, Ishak informed Ismail Abdi that he would be coming to Abdi's apartment and that Ismail Abdi should purchase heavy duty aluminum foil before Ishak arrived, Gov't Ex. 26-C, page 2.[5]  Ishak explained that the aluminum foil was needed to keep the khat fresh.  Later in the same call, Ishak informed

---

[5] Ishak explained that the aluminum foil was used to wrap the khat to preserve its freshness.

6

Ismail Abdi "You are the boss now.  Can you imagine I leaving all the stuff with you?" Gov't Ex. 26-C, page 2.

5.      On September 4, 2010, Ishak and defendant Ismail Abdi had a telephone conversation in which Ishak informed Ismail Abdi that the "stuff" must be covered with a piece of cloth, and Ismail Abdi stated that "I batched it into three bundles.  And it became four batches."  Gov't Ex. 26-D, page 3.  "Intent to distribute narcotics may be inferred from the packaging of drugs in a manner that would facilitate their sale . . ." as defendant ismail Abdi did in this case.  *United States v. Madina*, 2012 WL 1184360, at *1 (4th Cir. Apr. 10, 2012) (unpublished).  Furthermore, in that same call, Ismail Abdi informed Ishak that he "usually remove the Banana leaf from it" and that he "wrapped it very well and it is in the refrigerator." Gov't Ex. 26-D, pages 3-4.

6.      On November 13, 2010, Ishak and defendant Ismail Abdi had a telephone call in which the following exchange occurred:

Ishak:  If I give you about 10 pieces, can you arrange and keep it for me?

I am not going to come up.  I will just leave it with you.

Abdi:  That is okay.

Gov't Ex. 26-E, page 2.  Ishak testified that when he said "10 pieces," he was referring to ten bundles of khat that Abdi had stored for Ishak in Abdi's refrigerator.  Ishak also explained that he asked Ismail Abdi to divide the khat into two batches, each containing five bundles of khat.

7.      Also on November 13, 2010, Ishak and defendant Ismail Abdi had a telephone call in which the following exchange occurred:

Ishak:  One is perfect.  Your refrigerator is very good and the stuff I put in
        will be fresh until Wednesday because you do not open it.

7

Abdi:   Yes, I hope, I hope.  I will put it in for you and leave it at one.

Ishak:   There is a holiday coming up.  I am not going to beg any Somali to buy it.  I will just keep it and later on there will be shortage.

Abdi:   I know, I know.

Ishak:   I am not worried when the stuff is fresh like this.  Ismail, I thank you very much.

Gov't Ex. 26-F, page 2.

8.      On November 15, 2010, Ishak and defendant Ismail Abdi participated in a telephone conversation in which Ishak told Abdi to distribute khat to someone named "Hassan," and Ismail Abdi agreed to do that:

Ishak:   Okay, that is it.  That is it.  Whenever you get there, give Hassan one piece.  He will come and meet you.

Abdi:   Okay.  Do you want me to give him one piece?

Ishak:   Just one regular piece.  You can take it out for him.

Abdi:   Do you want me to give him one batch?

Ishak: No, no they are 2 in one batch.  Take one piece out and give it to him.

Abdi:   One piece?  You mean like one bundle?

Ishak:   Yes.

Abdi:   Okay.

Gov't Ex. 26-G, page 2.  Ishak testified that he instructed defendant Ismail Abdi to give "Hassan" a bundle of khat.

9.      On November 19, 2010, Ishak and defendant Ismail Abdi participated in a telephone conversation in which the two discussed khat and Abdi confirmed that he provided two bundles of khat to someone named "Hassan:"

8

Ishak:  Did you notice that the bottom was very tasty and sweet?  Didn't you know that?

Abdi:  It is still there the way you left it.  Hassan is the only one who took some of it.

Ishak:  Our Hassan, did he take just one?

Abdi: You can never satisfy Hassan.

Ishak:  How many did he take?

Abdi:   He took out 2 pieces.

Ishak:  You mean that night?

Abdi:   Yes, but that is not the problem.  It is here.

Ishak:  He told me one.  You know it is okay to tell the person if you took 2.

Abdi:   No, I told him "I will not give you more than one as Yonis instructed me.  He insisted and I let him take 2."

Gov't Ex. 26-H, pages 4-5.  Thus, by giving Hassan the khat, or permitting Hassan to take khat from defendant Ismail Abdi's refrigerator, defendant Ismail Abdi distributed khat to Hassan.  It is also worth noting that the defendant is charged with conspiracy, so the government is not required to show that he distributed khat, only that he conspired to distribute khat containing cathinone.  *See United States v. Jimenez Recio*, 537 U.S. 270, 275, 123 S. Ct. 819, 822 (2003) (failure of the conspiracy to achieve its objective does not necessarily terminate the conspiracy); *United States v. Shabani*, 513 U.S. 10, 16, 115 S. Ct. 382 (1994) ("[T]he criminal agreement itself is the actus reus," actual possession or distribution is not required); *Iannelli v. United States*, 420 U.S. 770, 777, 95 S. Ct. 1284, 1289 (1975) ("Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act."); *United States v. Dallas*, 229 F.3d 105, 110–11 (2d Cir. 2000) (holding that failure to consummate scheme does not preclude

conspiracy conviction); *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1369 (11th Cir. 1994) ("Nor must the object of the conspiracy actually be achieved."); *United States v. Gilley*, 836 F.2d 1206, 1213 (9th Cir. 1988) ("failure to carry out the conspiracy does not preclude its existence").

10.     On November 19, 2010, Ishak and defendant Ismail Abdi participated in a telephone conversation in which the two discussed khat and whether it was sufficient to make Ismail Abdi "high."  Ismail Abdi tacitly admits that he stored the khat for Ishak for eight days and that he uses it to "get high:"

> Abdi:   That stuff was there for 8 days tomorrow.  God knows how good it
>         is going to be.  You go home anyway and whatever is left from there.
>
> Yonis:  Yes.
>
> Abdi:   I do not think that old stuff will make me high.  Even if it makes me
>         high, it will take some time before I get high.  Yonis that thing is 8
>         days old by tomorrow take that into account.

Gov't Ex. 26-I, page 2.

11.     Also on November 19, 2010, Ishak and defendant Ismail Abdi participated in a telephone conversation in which the two discussed khat and the fact that "Hassan" was going to pick up khat from Ismail Abdi to sell to others:

> Abdi:   We had an appointment.  So why did you send Hassan to me?
>
> Ishak:  I sent Hassan to you, because he will take care of it and sell it to
>         some of my people who can't wait for me.
>
> Abdi:   Yeah?
>
> Ishak:  Some people need the stuff and cannot wait for me.  So he is going
>         to take care of it for me.

*        *        *

10

Abdi:    Do you remember when you stored a lot of it in my place and I
         kept some for myself before sending you the rest?

Ishak:   Yes.

Abdi:    I want to do the same thing.  Yonis, I have been taking care of it all
         that time.  My fridge is on zero, because of that until now.

[Voices Overlap]

Ishak:   Brother, brother, I would have given you all of it but, I want to sell
         it.

[Voices Overlap]

Abdi:    I will give it to you now.

Ishak:   Ismail, we are not chewing it, we are selling it.  There is a scarcity
         of the stuff even in London, but I couldn't sell it here that is the
         reason why I stored it in your place; otherwise I wouldn't have
         done it myself.

Abdi:    How many bundles shall I keep?

Ishak:   Take 6 to 7 bundles.  I want to sell it: I am not going to chew it brother.

Gov't Ex. 26-J, pages 2-3.  In this call, Ishak clearly informed Hassan that he obtains his khat

from London.  It is also clear that Abdi knows that Ishak is selling khat, hence the need to store

khat in defendant Ismail Abdi's refrigerator.  Also, despite the insinuation by Ismail Abdi's

attorney that Ishak "tricked" Ismail Abdi, it is clear from this conversation that Ismail Abdi's

participation in the conspiracy was knowing and voluntary, and that Ismail Abdi enjoyed free

khat in exchange for his contribution to the conspiracy.[6]

---

[6] Many drug conspiracies are "only a loosely-knit association of members linked only by
their mutual interest in sustaining the overall enterprise of catering to the ultimate demand of a
particular drug consumption market."  *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir.
1993).  Here, Ismail Abdi knew Ishak for many years and sought to gain free khat by assisting
the conspiracy when Ishak needed to store excess khat.

12.     Ismail Abdi's storage of khat in his apartment—not to mention his distribution of khat to "Hassan"—substantially assisted the conspiracy and demonstrates his knowing and voluntary participation in the conspiracy.  *United States v. Stevenson*, 439 Fed. Appx. 268, 269 (4th Cir. 2011) ("We conclude that the evidence was sufficient to show that Stevenson entered into a conspiracy with Beatty and Patterson," where, among other things, "Stevenson knew Beatty had a history of dealing drugs and had allowed him to store drugs on his property"); *United States v. Temple*, 433 Fed. Appx. 630, 632 (10th Cir. 2011) (affirming the defendant's conviction for conspiracy to possess with intent to distribute while noting that the defendant's "primary role was to store a co-conspirator's drugs and money); *United States v. Varnedoe*, 428 Fed. Appx. 917, 919 (11th Cir. 2011) (holding that defendant was "a trusted and important member" of a drug conspiracy insofar as among other things he stored drugs "at his residence for other participants in the drug conspiracy"); *United States v. James*, 40 F.3d 850, 873 (7th Cir. 1994) ("a defendant who allows coconspirators to use her residence as a place for storing narcotics and drug trafficking paraphernalia also renders a valuable service to her coconspirators, increasing the likelihood that they will succeed in their illegal aim"), *vacated on other grounds*, 516 U.S. 1022 (1995); *United States v. Zafiro*, 945 F.2d 881, 888 (7th Cir. 1991) ("[I]f Zafiro knew that her apartment was being used as a stash house, she was knowingly rendering material assistance to her codefendants and desired that their malefaction succeed."), *aff'd on other grounds*, 506 U.S. 534 (1993).

13.     Ishak testified that defendant Ismail Abdi allowed Ishak to store between 40 to 60 bundles of khat in Ismail Abdi's refrigerator.  Because consumption quantity is around two

bundles, the quantity stored by Ismail Abdi in his refrigerator permits the jury to infer intent to distribute and an intent to join a conspiracy whose goal was distribution of the khat.  *United States v. Jones*, 238 Fed. Appx. 41, 43 (6th Cir. 2007) (citing *United States v. White,* 932 F.2d 588, 590 (6th Cir. 1991)); *United States v. Kates*, 174 F.3d 580, 582 (5th Cir. 1999) ("Intent to distribute may be inferred from the possession of a quantity of drugs too large to be used by the defendant alone."); *United States v. Powell,* 982 F.2d 1422, 1430 (10th Cir. 1992) (noting it is well settled that intent to distribute "may be inferred from the possession of a large quantity of the substance").

14.     Additionally, the fact that Ishak permitted Ismail Abdi access to the khat supply itself demonstrates the trust placed in Ismail Abdi by the conspiracy and his role in the conspiracy.  It "runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes."  *United States v. Batista–Polanco*, 927 F.2d 14, 18 (1st Cir. 1991).

15.     FBI Special Agent Charity Ryder testified that on May 18, 2011, she was present for the interview of defendant Ismail Abdi.  An audio recording of that interview was admitted into evidence.  Gov't Ex. 26-N.  Among other things, Ismail Abdi told federal agents:

- His telephone number is 703-589-0659 (the same number ascribed to him in the intercepted telephone calls); and

- He did not chew khat (which is a false exculpatory statement).[7]

---

[7] *See United States v. Zandi*, 769 F.2d 229, 235 (4th Cir. 1985) (holding that the jury could reasonably infer knowledge from, inter alia, the defendant's false exculpatory statements); *see United States v. Melling*, 47 F.3d 1546, 1557 (9th Cir. 1995) (Evidence of consciousness of guilt is frequently thought to be "second only to a confession in terms of probative value."); *United States v. Meyer*, 733 F.2d 362, 363 (5th Cir. 1984) ("[f]alse exculpatory statements may be used . . . as substantive evidence tending to prove guilt").

16.     After being told that federal agents had intercepted Ishak's telephone calls, Ismail

Abdi changed his story and told federal agents:

- He was a khat user (which was inconsistent with what he had previously told federal agents);[8]

- He obtained his khat from Ishak;

- He did not know what Ishak did for a living (another false exculpatory statement);[9]

- "I don't know anything about Ishak, honestly;"[10]

- He does not know where Ishak obtains the khat;[11]

- Fresh khat is more potent and more desirable;

- There is no fresh khat available in the United States (another false exculpatory statement); and

- He believed that khat was unlawful.

---

[8] *See United States v. Angwon*, 271 F.3d 786, 797 n.2 (9th Cir. 2001) ("Guilty intent can be inferred from the defendant's conduct and other circumstantial evidence, such as . . . lying or giving inconsistent statements to government agents . . . ."). "The jury may treat a defendant's false explanations "as substantive evidence of the defendant's guilt." *United States v. Rojas*, 349 Fed. Appx. 467, 470 (11th Cir. 2009) (quoting *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995)).

[9] *See United States v. Johnson*, 64 F.3d 1120, 1128 (8th Cir. 1995) (observing that lying to law enforcement agents contributes to a finding of guilt).

[10] *See United States v. McDowell*, 250 F.3d 1354, 1367 (11th Cir. 2001) (Courts have "recognized that a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt."); *see also United States v. Allison*, 908 F.2d 1531, 1535 (11th Cir. 1990) ("The jury may view defendant's false explanatory statement as substantive evidence proving guilt.").

[11] When a defendant claims of lack of knowledge, as Ismail Abdi did, a jury is free to infer the opposite of the defendant's testimony: in this case, that Ismail Abdi knew that he was sending khat proceeds to England. *United States v. Bacon*, 598 F.3d 772, 777 (11th Cir. 2010).

17.     Furthermore, as discussed below, Ismail Abdi laundered money by transmitting khat proceeds to khat suppliers.  A defendant "involved only in the money laundering facet of the drug business can be considered a part of the conspiracy to distribute those drugs."  *United States v. High*, 117 F.3d 464, 469 (11th Cir. 1997).  Indeed, "money laundering and distribution of narcotics are closely connected."  *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994).  "Money laundering often ensures the success of the underlying substantive crime, drug trafficking."  *High*, 117 F.3d at 469; *United States v. Perez*, 922 F.2d 782, 786 (11th Cir. 1991) (money laundering can be an integral part of certain drug distribution conspiracies).  In this case, like many drug cases, money laundering was important to the drug distribution conspiracy insofar as it was necessary to ensure a continuous supply of khat.  Therefore, even if Ismail Abdi had not stored khat for the conspiracy, evidence of his money laundering alone makes him liable as a participant in the distribution conspiracy.

Accordingly, considered in the light most favorable to the prosecution, this evidence is more than sufficient to establish each and every element of Count One with respect to defendant Ismail Abdi.

## III.     Conspiracy to Commit Money Laundering

In Count Two, defendant Ismail Abdi is also charged with Conspiracy to Commit Money Laundering.  "To obtain a conviction for money laundering conspiracy under 18 U.S.C. § 1956(h), the Government must prove the following essential elements: (1) the existence of an agreement between two or more persons to commit one or more of the substantive money laundering offenses proscribed under 18 U.S.C. § 1956(a) or § 1957; (2) that the defendant knew that the money laundering proceeds had been derived from an illegal activity; and (3) the

defendant knowingly and voluntarily became part of the conspiracy." *United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010); *United States v. Singh*, 518 F.3d 236, 248 (4th Cir. 2008).[12]  It is not necessary for the government to show that each co-conspirator knew all other co-conspirators or even knew the whole scheme. *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993) ("It is of course elementary that one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence.").

The indictment alleges that Ismail Abdi, Ishak, and nine other remaining defendants conspired to commit three types of money laundering:  Concealment Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i);[13] International Promotion Money Laundering, in

---

[12] Conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) does not require the commission of an overt act in furtherance of the conspiracy.  *See Whitfield v. United States*, 543 U.S. 209, 214, 125 S. Ct. 687, 691 (2005) ("Because the text of § 1956(h) does not expressly make the commission of an overt act an element of the conspiracy offense, the Government need not prove an overt act to obtain a conviction."); *Green*, 599 F.3d at 372 ("as with proof of a drug conspiracy, a money laundering conspiracy does not require proof of an overt act"); *United States v. Bolden*, 325 F.3d 471, 491 (4th Cir. 2003) ("§ 1956(h) does not require an overt act to be either alleged or proven").

[13] The substantive crime of Concealment Money Laundering has four elements: "(1) the defendant conducted a financial transaction affecting interstate commerce; (2) 'the transaction involved the proceeds of specified unlawful activity'; (3) the defendant knew that the property involved was derived from unlawful activity; and (4) 'the defendant knew that the transaction was designed in whole or part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity.'"  *United States v. Blair*, 661 F.3d 755, 764 (4th Cir. 2011) (quoting *United States v. Wilkinson*, 137 F.3d 214, 221 (4th Cir. 1998)).

16

violation of 18 U.S.C. § 1956(a)(2)(A);[14] and International Concealment Money Laundering, in violation of 18 U.S.C. § 1956(a)(2)(B)(i).[15]

Courts have held that the following pieces of evidence, among others, can constitute evidence of intent to conceal:  statements by defendants and co-conspirators probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business or individuals; using third parties to conceal the real owner; and expert testimony on the practices of criminals.  *United States v. Johnson*, 440 F.3d 1286, 1291 (11th Cir. 2006); *United States v. Garcia-Emanuel*, 14 F.3d 1469, 1474 (10th Cir. 1994).

The following evidence, taken in the light most favorable to the prosecution, establishes each of the elements of Count Two as to defendant Ismail Abdi.

1.      A record from Iftin shows that on August 8, 2010, defendant Ismail Abdi transmitted $1,5000, through Iftin Express, to Sharif Mohamud Ali, in the United Kingdom. Gov't Ex. 57-H.  Ishak and Special Agent Michael Gruchacz identified Sharif Mohamed Ali as

---

[14] A substantive Count of International Promotion Money Laundering requires the government to prove that the defendant "caused funds to be transferred 'to a place in the United States from or through a place outside . . . with the intent to promote the carrying on of specified unlawful activity.'"  *United States v. Robinson-Gordon*, 418 Fed. Appx. 173, 176 (4th Cir. 2011) (quoting 18 U.S.C. § 1956(a)(2)(A)).

[15] The substantive crime of International Concealment Money Laundering (also known as Transportation Money Laundering) has four elements:  (1) the defendant transported money from the United States to another country; (2) the defendant knew that the money represented the proceeds of some form of unlawful activity; (3) the defendant knew that the transportation of the money was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the funds.  *Cuellar v. United States*, 553 U.S. 550, 561, 128 S. Ct. 1994, 2002 (2008).

one of the khat suppliers based in the United Kingdom.  Ishak also testified that the money sent
to the United Kingdom was the proceeds of khat sales.  Ishak also testified that he asked other
individuals to transmit money to khat suppliers in the United Kingdom so as to hide his own
involvement and to prevent authorities from discerning that the money was the proceeds of khat
distribution.

2.      A record from Dahabshil, Inc. shows that on October 2, 2010, defendant Ismail
Abdi transmitted $500, through Dahabshil, Inc. to "Hersi Hassan," in the United Kingdom.
Ishak and Special Agent Michael Gruchacz identified Hersi Hassan Farah as one of the khat
suppliers based in the United Kingdom.

3.      FBI Special Agent Charity Ryder testified that on May 18, 2011, she was present
for the interview of defendant Ismail Abdi.  An audio recording of that interview was admitted
into evidence.  Gov't Ex. 26-N.  Among other things, Ismail Abdi told federal agents:

- He once transferred $1,500 to England, at Ishak's request, through
Western Union;

- He used Dahabshil to transfer the funds (which is different from his prior
statement that he sent the money through Western Union);

- He did not know why Ishak asked him to send this money to someone in
England (a statement which the jury can find is false);

- He did not know what Ishak did for a living (which is also a false
statement);[16]

- He knew that sending khat proceeds overseas was unlawful; and

---

[16] In an intercepted conversation, Ishak explicitly told defendant Ismail Abdi that he sells
khat.  *See* Gov't Ex. 26-J, pages 2-3 (Ishak: "Ismail, we are not chewing it, we are selling it.").
Furthermore, this explicit statement was unnecessary, because Ismail Abdi had previously
obtained khat from Ishak and knew that he sold khat to others.  On cross-examination, Ishak was
adamant that Ismail Abdi knew that he (Ishak) was a khat dealer.

• On a second occasion, he transferred $400 for Ishak.

4.      Postal Inspector Phil Garn, who testified as an expert, noted that khat distributors typically transmit money to their khat suppliers by using money remitting businesses (such as Dahabshil).  According to Garn, khat suppliers use the money remitting businesses like Dahabshil to conceal the transactions because the khat distributors know that these business are less likely to scrutinize transactions.

5.      The evidence discussed above, with respect to Count One, demonstrates that defendant Ismail Abdi knew that:  (1) Ishak was a khat dealer and the money Ismail Abdi sent for Ishak to khat suppliers in the United Kingdom was the proceeds of khat sales; and (2) that Ishak asked Ismail Abdi to send this money in order to conceal the fact that the funds were derived from khat sales and were initially paid to Ishak from his khat distributors.  It clearly establishes the intent of Ismail Abdi.

6.      From all of this evidence, the jury can infer, among other things, that Ismail Abdi transmitted funds, on at least two occasions, for the purpose of promoting the specified unlawful activity (distribution of khat containing cathinone) and to conceal and disguise the nature of and source of the funds.  The evidence also shows that defendant Ismail Abdi entered into a conspiracy with Ishak and others to accomplish these goals.

19

IV.     **Conclusion**

Accordingly, the government adduced sufficient evidence at trial for the jury to find defendant Ismail Abdi guilty of both counts charged in the Superseding Indictment.  This Court, therefore, should deny any motion of defendant Ismail Abdi's for judgment of acquittal.

Respectfully submitted,


Neil H. MacBride
United States Attorney


_____/s/_____
Mary K. Daly
Assistant United States Attorney
Michael J. Frank
Elizabeth L. D. Cannon
Brian K. Fitzpatrick
Special Assistant United States Attorney
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  (703) 299-3700
Fax:  (703) 299-3982

## CERTIFICATE OF SERVICE

I certify that on this 4th day of May, 2012, I electronically filed the foregoing

Memorandum with the Clerk of the Court using the CM/ECF System, which will send notice of

such filing to counsel of record.


_____/s/_____
Michael J. Frank
Special Assistant United States Attorney
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  (703) 299-3700
Fax:  (703) 837-8242